*In re* JOHN SHUTTERS, a Minor.—(THE PEOPLE OF THE STATE OF ILLINOIS, Petitioner-Appellee, *v.* JOHN SHUTTERS, Respondent-Appellant.)

Second District   No. 76-520

Opinion filed December 8, 1977.

William A. Kelly, Public Defender, of Galena, and Ralph Ruebner and Alan D. Goldberg, both of State Appellate Defender's Office, of Elgin, for appellant.

John W. Cox, State's Attorney, of Galena (Richard J. Moriarity, Assistant State's Attorney, and Phyllis J. Perko and Barbara A. Preiner, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE BOYLE delivered the opinion of the court:

John Shutters, hereinafter "respondent", then age 16, was adjudged delinquent based on a finding of the trial court that he was guilty beyond a reasonable doubt of burglary (Ill. Rev. Stat. 1975, ch. 38, par. 19—1(a)). After a dispositional hearing, the respondent was committed to the Department of Corrections with the mittimus stayed, conditioned upon the respondent's abiding by the terms of the dispositional order. On appeal he contends the trial court erred in denying his motion to suppress his confession.

Respondent was arrested on July 9, 1976, by Arthur Walker, Deputy Sheriff of Jo Daviess County, for possession of cannabis, at approximately 10 p.m. Respondent was a passenger in David McPhillips' automobile, which was stopped for a broken taillight and in which a plastic sack containing cannabis was found. Respondent and four other persons were told to stay in the car. However, they all emerged therefrom. Deputy Walker again asked them to return to the auto, and they all did so, except for the respondent. He kept on moving away from the car, and Patrolman Eugene Woker of the Stockton Police seized him and placed him under arrest. The four other juveniles were placed in a Stockton police car and returned to their parents. The respondent and McPhillips, however, were taken by Deputy Walker to the Galena, Illinois, sheriff's office. Deputy Walker testified that the reason they released the other juveniles to their parents and did not release the respondent was that he believed the respondent was 17 years old and not a juvenile. Respondent was accordingly processed as an adult.

Officer Woker testified that he went to see respondent's father, Clifford Shutters, at his home in Stockton. He advised Mr. Shutters that his son, the

respondent, had been arrested, taken to Galena, and would probably need bond money to obtain his release. Mr. Shutters told Officer Woker to "lock him up, he would not bond him out." Deputy Walker further testified that although he had known the respondent for 15 years, he also did not think of him as a juvenile that night.

At the sheriff's office in Galena, Deputy LaDon Trost expressed an interest in talking with the respondent. Deputy Walker asked the respondent if he would be willing to talk to Deputy Trost, and the respondent agreed.

Deputy Trost testified that he advised the respondent he wanted to talk to him about the cannabis found in his car at approximately 11:30 p.m. Deputy Trost then read the respondent his rights from a waiver of rights form, and the respondent advised the deputy that he would talk to him without the presence or advice of an attorney and signed the waiver of rights form at 11:31 p.m. This waiver of rights form was admitted at trial over objections as Exhibit No. 2. Deputy Trost further testified that the respondent volunteered, during his interrogation on the arrest for cannabis, that he had been involved in a burglary at Gaylo Plumbing and Heating in Stockton, Illinois. The respondent was willing to make a statement to this effect, which was started at 12:45 a.m. and completed at 1:10 a.m. The respondent signed the statement at this time, after he had read it. In the written statement the respondent again admitted that he had participated in a burglary at Gaylo's during which $70 was stolen. Respondent's objections to the admission of this statement as well as to another waiver of rights form, which was signed by the respondent before he gave this statement, were overruled by the trial court.

Respondent made a total of three statements during the early morning hours of July 10, 1976, during his interrogation. At the close of the interrogation, Deputy Trost took the respondent back to Stockton to look for the money pouch that had been taken from Gaylo's.

The defense contends that the respondent's first confession, taken at 12:45 a.m., should be excluded because he did not freely, knowingly and intelligently waive his rights. The respondent argues that his confession and waiver of rights were not voluntarily given because at the time of his confession he was in a drugged condition under the influence of marijuana, the length of his interrogation lasted until the early morning hours, and, in addition, his statutory juvenile rights were violated. The defense contends that the combination of these factors clearly demonstrates that his waiver of rights and confession were not voluntary. We disagree.

■■ It is well settled that the voluntariness of a juvenile's confession is to be determined by a totality of the circumstances. (*In re Lamb* (1975), 61 Ill. 2d 383, 336 N.E.2d 753, *cert. denied* (1976), 425 U.S. 938, 48 L. Ed.

2d 180, 96 S. Ct. 1672 (1976).) If counsel for the juvenile is not present when a confession or admission is obtained, the utmost care must be taken to insure that the confession was voluntary and not coerced, suggested or the end result of the juvenile's ignorance of his rights or of his adolescent fantasy, fright or despair. *In re Gault* (1967), 387 U.S. 1, 18 L. Ed. 2d 527, 87 S. Ct. 1428; *People v. Simmons* (1975), 60 Ill. 2d 173, 326 N.E.2d 383.

■■ Our examination of the totality of circumstances in the instant case, however, does not lead to the conclusion that the respondent's confession was involuntary. First, careful scrutiny of the record reveals that the respondent's confession was not a product of an all-night interrogation of a juvenile. He was arrested at approximately 10 p.m., after attempting to escape from the police, and he was immediately brought to the station at Galena, Illinois. Prior to being questioned the respondent was read his rights by Officer Trost. The respondent indicated to the officer that he was willing to talk without the advice and counsel of an attorney and signed his waiver of rights at 11:31 p.m. The respondent, while being questioned on the cannabis possession charge, volunteered a confession to the burglary without having been asked a question about such offense. The respondent then signed a second waiver of rights form at 12:45 a.m. He then gave a written statement to Officer Trost, which began at 12:45 a.m. and admitted his complicity in the burglary in question. That statement was finished at 1:10 a.m. The interrogation of the respondent continued, it is true, until some time between the hours of 3 and 6 a.m. Although we do not intend to condone the actions of the officers who continued this prolonged interrogation of a juvenile until such a late hour, it is undisputed that the respondent's voluntary confession at issue here occurred between the hours of 12:45 and 1:10 a.m. Thus, the confession was the result of questioning which lasted a little over one hour. In addition there is no evidence that this juvenile did not knowingly or intelligently waive his rights to remain silent nor that his unsolicited confession was coerced or induced in any way. (*People v. Prude* (1977), 66 Ill. 2d 470, 363 N.E.2d 371.) Accordingly, we must find that the length of time in which respondent was interrogated prior to his confession does not render the confession inadmissible. *United States v. Davis* (7th Cir. 1976), 532 F.2d 22.

The defense next contends that the respondent's drugged condition makes it improbable that he knowingly and understandingly waived his rights and makes it equally unlikely that his confession was voluntary. Respondent relies on *People v. Roy* (1971), 49 Ill. 2d 113, 273 N.E.2d 363, and *People v. Koesterer* (1976), 44 Ill. App. 3d 468, 358 N.E.2d 295, in support of this contention. In *Roy*, the defendant's confession was not admissible because it had not been shown that the defendant had

knowingly waived his right to counsel. The evidence in *Roy* established that the defendant appeared intoxicated and was unsteady at the time of his arrest and that the officers repeatedly had to advise him of his right to counsel and his right to remain silent.

In the instant case, however, the evidence of respondent's drugged condition is less clear than in *Roy.* Here there is evidence that respondent admitted to Deputy Trost that he had smoked pot in the afternoon, evening, and while in the car that night. Deputy Trost characterized his behavior as excitable. However, Deputy Trost thought the respondent was only slightly under the influence of intoxicants or drugs. Deputy Walker testified he was not sure whether the respondent was intoxicated or drugged but did state that the respondent resisted everything he was asked to do and used a lot of profanity.

Officer Woker was of the opinion that the respondent appeared intoxicated or drugged. His opinion was based on one fact—the respondent was very mouthy. He did testify that he was able to understand the respondent and also testified that he walked properly. Patti Trost, the radio operator at the Jo Daviess County sheriff's office, witnessed two of the respondent's statements and testified that the respondent was under the influence of an intoxicant or drug. She further stated that the respondent's condition was "nothing real extreme" and that he knew where he was, appeared to understand all questions, and never requested to see anyone.

■■ ■ It is well established that where the evidence clearly demonstrates that the respondent is so grossly intoxicated that he no longer has the capacity to waive his rights, it is proper to suppress any statement he has made while in such condition. (*People v. Moon* (1976), 38 Ill. App. 3d 854, 350 N.E.2d 179.) It is equally well settled that where the proof of gross intoxication or drugged condition is less clear, the fact that the respondent has recently imbibed or taken drugs does not make his confession inadmissible but goes only to the *weight* to be accorded his testimony. (*People v. Moon* (1976), 38 Ill. App. 3d 854.) Here, the evidence of respondent's intoxication is conflicting and unclear from this record. The trial court heard and saw the witnesses testify in this delinquency proceeding, and this court will not substitute its judgment for that of the trier of fact where the evidence is conflicting and subject to different interpretations. (*In re Smith* (1976), 40 Ill. App. 3d 248, 352 N.E.2d 317.) The evidence of respondent's drugged condition was merely one of the factors to be considered by the trial court on the totality of the circumstances of this case. Its finding regarding the voluntariness of the respondent's confession will not be disturbed on appeal unless it is manifestly against the weight of the evidence or unless the trial court has committed a clear abuse of discretion. (*People v. Townsend* (1957), 11 Ill.

2d 30, 141 N.E.2d 729.) The State is further only required to prove the voluntariness of the respondent's confession by a preponderance of the evidence and not by proof beyond a reasonable doubt. (*People v. Townsend* (1957), 11 Ill. 2d 30.) Under the circumstances exhibited here we are of the opinion that the State has met its burden of demonstrating by a preponderance of the evidence that respondent's confession was unaffected, under the totality of these circumstances, by his marijuana smoking prior to his volunteered statement of participation in a previous, unrelated burglary.

■■ Respondent's next contention is that his statutory rights as a juvenile were preemptorily violated by the police officers' failure to properly notify the respondent's parents or to deliver the respondent to a juvenile probation officer where he is then either to be released or delivered promptly to the court or the court-designated reception area for minors. (Ill. Rev. Stat. 1975, ch. 37, par. 703—2(1).) The juvenile officer is then required by statute to investigate the circumstances of the minor, the situation surrounding his arrest, and to release the minor unless he determines that further detention is immediately necessary. Ill. Rev. Stat. 1975, ch. 37, par. 703—4.

In the instant case, even the validity of the State's notification of the juvenile's father is subject to doubt. Besides pointing out to Mr. Shutters that the respondent was in custody at the Galena police station, the officer also told the father that he would probably need bond money in order to obtain his son's release. The latter part of this statement is clearly inaccurate and contrary to the last cited statute (Ill. Rev. Stat. 1975, ch. 37, par. 703—4), which dictates the release of a juvenile without bond under these circumstances. It is clear, however, that the State's failure in this cause to have the respondent's parent present during his questioning does not render his statements at the police station made at the time of his arrest inadmissible. *In re Bizzle* (1976), 36 Ill. App. 3d 321, 343 N.E.2d 633.

In addition, other statutory juvenile procedures were also violated by the officers in this case out of their mistaken belief that the respondent was not a juvenile. For example, the officers failed to bring the respondent before a juvenile probation officer, who would make the determination, among others, whether respondent required further detention.

The respondent in his argument, although noting that a per se violation of these juvenile provisions does not require the exclusion of confessions that are otherwise admissible (*People v. Steptore* (1972), 51 Ill. 2d 208, 281 N.E.2d 642), points to this court's admonition in *In re Stiff* (1975), 32 Ill. App. 3d 971, 336 N.E.2d 619, in support of his contention that these violations of the respondent's juvenile rights are factors, along with the drugged condition and length of his interrogation, which, under the

totality of the circumstances, demonstrate that his confession was involuntary. In *Stiff*, 32 Ill. App. 3d 971, 978, 336 N.E.2d 619, 625, we stated,

> "[T]hat as a matter of good practice special precaution should be taken to insure that juveniles understand their rights and how to exercise them and that it would be preferable to make sure, whenever possible, that a parent or guardian is present when a juvenile waives his rights. In a close case the failure to follow this procedure may result in a finding that under the totality of the circumstances the waiver is ineffective."

This is not such a case. Our earlier discussion has shown that the respondent's confession was not the result of either a prolonged interrogation or a drugged condition. We further conclude that the combination of the above factors, including the violation of the juvenile provisions, does not establish under the totality of the circumstances of this case that the respondent's written statement was involuntary or coerced in any way. (*In re Stiff*, 32 Ill. App. 3d 971.) Thus, the trial court's finding that the respondent's confession was voluntarily given is not contrary to the manifest weight of the evidence. *People v. Wipfler* (1976), 37 Ill. App. 3d 400, 346 N.E.2d 41.

The judgment of the circuit court of Jo Daviess County is affirmed.

Judgment affirmed.

NASH and WOODWARD, JJ., concur.